**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,**
**WESTERN DIVISION**

TAMRA WARNOCK                                              PLAINTIFF


VERSUS                              CIVIL ACTION NO. 5:08cv01-DCB-JMR


STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, J. PAUL CLINTON
AND STOKES & CLINTON, P.C.                                 DEFENDANTS


<u>**OPINION AND ORDER**</u>

This matter comes before the Court on defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion for Judgment on the Pleadings [**docket entry no. 16**], defendants J. Paul Clinton's ("Clinton") and Stokes & Clinton, P.C.'s ("Stokes") Motion to Dismiss Plaintiff's RICO Claim [**docket entry no. 25**], and defendants Clinton's and Stokes' Motion for Judgment on the Pleadings [**docket entry no. 26**]. Having carefully considered the motions, memoranda in support and opposition thereof, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

**I. BACKGROUND AND PROCEDURAL HISTORY**

There are several layers to the instant litigation. For clarity, the Court will describe each layer individually. Defendant State Farm is an automobile insurance company whose services include providing coverage for its customers when they are

involved in automobile accidents.  After paying any claims on behalf of its customers, State Farm often institutes subrogation actions to pursue any legal claims its customers may have against the other parties involved in the accidents.  The defendants Clinton and Stokes often represent State Farm in such subrogation actions.

A.  *The Subrogation Action - Bridges v. Warnock*

Billy Bridges, a State Farm policyholder, was involved in an automobile accident with Jake Foster ("Foster"), a minor, on June 25, 2001.  Bridges filed a claim under his insurance policy with State Farm to recover his damages from the accident.  As a result, State Farm, through its attorneys, Stokes and Clinton, filed a subrogation action (the "Warnock-Bridges action") against both Foster and the now-plaintiff Tamra Warnock ("Warnock"), as Foster's guardian, in the County Court of Warren County, Mississippi (Cause No. 05,0334-CO) to recover the amount it paid to Bridges.  Warnock was served with process in the Warnock-Bridges action on October 12, 2006.  State Farm obtained a default judgment against Warnock on November 22, 2006, which it later recorded and attempted to collect.

On January 16, 2007, Warnock sought to set aside the default judgment against her.  In addition, she sought damages and sanctions against Clinton and Stokes for filing a "deliberately misleading and false statement." (State Farm's Answer to Pl.'s

Amended Class Action Complaint Ex. A at 36.)  Specifically, Warnock claimed that State Farm and its attorneys should have known that Warnock was not the driver of the car and that she was not the guardian of the driver, Foster.  Warnock further argued that State Farm, Clinton and Stokes should have known that the statute of limitations had run on the subrogation action.  The County Court of Warren County set aside the default judgment on February 26, 2007, but denied Warnock's request for sanctions against Clinton and Stokes.

B.   *The Injunction Action -* *Clinton v. Varner, Parker & Sessums*

     After the default judgment in the Bridges-Warnock subrogation action was set aside, defendants Clinton and Stokes learned that Varner, Parker & Sessums ("Varner"), counsel for Warnock, had placed a newspaper advertisement alleging that Clinton and Stokes had intentionally instituted numerous meritless lawsuits on behalf of State Farm.  Clinton and Stokes brought an action in the Circuit Court of the First Judicial District of Hinds County, Mississippi seeking to enjoin Varner from publishing any more of these types of advertisements.  A permanent injunction was granted on November 9, 2007, the circuit court noting that

> the complaints were inartfully drawn but that the Complaint substantially complies with the Notice Pleadings requirements of the Courts of this State and ... there is no evidence whatsoever that [Clinton and Stokes] intentionally sued any individuals in either lawsuit without a reasonable basis.

(State Farm's Answer Ex. B at 14.)

3

### C.  The Instant Action

On January 7, 2008, Warnock filed her initial complaint in the instant action, alleging that the defendants are liable under 18 U.S.C. § 1964(c) for violating various provisions of the Racketeer Influenced and Corrupt Organizations (RICO) Act.  Specifically, the plaintiff claims that the defendants violated 18 U.S.C. 1962(c) & (d), which prohibit participating or conspiring to participate in "a pattern of racketeering activity or collection of unlawful debt."  (Compl. ¶¶ 40-53.)  The core of the plaintiff's argument is that the defendants committed mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 by wrongfully filing a subrogation action against her when they knew she could not be liable.  Along with her initial complaint, the plaintiff filed her RICO statement of standing. [**docket entry no. 2**].  On February 18, 2008, the plaintiff filed an Amended Class Action Complaint [**docket entry no. 11**] on behalf of herself and "[a]ll persons who were not drivers or operators of vehicles involved with insureds of State Farm who were nevertheless sued by State Farm and Clinton and Clinton and Stokes [sic] wrongfully seeking money damages."  (Amended Compl. ¶ 64.)  The class has not yet been certified.

Several filings have been made since the complaint.  On March 5, 2008, defendant State Farm filed a Motion for Judgment on the Pleadings.  On March 28, 2008, defendants J. Paul Clinton and Stokes & Clinton, P.C. filed joint Motions to Dismiss Plaintiff's

4

RICO Claim and Motions for Judgment on the Pleadings.  These three motions now are before the Court.

## II. ANALYSIS

As a preliminary note, defendants Clinton and Stokes have filed two separate motions seeking to dispose of the instant case - a Rule 12(b)(6) motion to dismiss for failure to state a claim as to the plaintiff's RICO action and a Rule 12(c) motion for judgment on the pleadings as to the plaintiff's abuse of process claim.

Rule 12(b) motions must be made before responsive pleadings; however, Rule 12(c) motions may be made after the pleadings have closed.  FED. R. CIV. P. 12(b-c); Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999).  Where Rule 12(b) motions are made after the responsive pleading is filed, "such motions will be treated as a motion for judgment on the pleadings based on a failure to state a claim on which relief may be granted."  Jones, 188 F.3d at 324. Therefore, Clinton's and Stokes' Rule 12(b)(6) motion to dismiss plaintiff's RICO claim, which was filed after their responsive pleading was filed, will be treated as a Rule 12(c) motion for judgment on the pleadings.  The Court will evaluate this Rule 12(c) motion as to the RICO claim, along with Clinton's and Stokes' additional Rule 12(c) motion for judgment on the pleadings pertaining to the abuse of process claim and State Farm's motion for judgment on the pleadings as to all counts, in one cohesive analysis.

*A.   Standard for Rule 12(c) Motions for Judgment on the Pleadings*

"A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." Doe v. Myspace, Inc., 528 F.3d 413, 418 (5th Cir. 2008) (citing Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004)). "'[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.'" Id. (quoting Hughes v. The Tobacco Inst., Inc., 278 F.3d 417, 420 (5th Cir. 2001)) (alteration in original).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Id. (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007)).  "'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. Corp., 127 S.Ct. at 1974).

*B.   Abuse of Process Claim*

Defendants Clinton and Stokes argue that the plaintiff's abuse of process claim should be dismissed for the following reasons: (1) it is barred by the statute of limitations; (2) it is barred by principles of res judicata and collateral estoppel; and (3) it is inappropriate under theories of comity, equity and fundamental fairness.[1]  The Court concludes that the abuse of process claim is

---

[1]   Defendant State Farm did not brief the issue of abuse of process in its Motion for Judgment on the Pleadings.

time barred; therefore, the Court need not reach conclusions as to the defendants' other arguments.

Clinton and Stokes correctly submit that the abuse of process claim is untimely.  "A claim for abuse of process is subject to a one-year statute of limitations." <u>Sullivan v. Boyd Tunica, Inc.</u>, No. 2:06CV016-B-A, 2007 WL 541619, *3 (N.D. Miss. February 16, 2007) (citing <u>Suthoff v. Yazoo County Indus. Dev. Corp.</u>, 722 F.2d 133, 136 (5th Cir. 1983)).[2]  "A cause of action for abuse of process [] accrues at 'the termination of the acts which constitute the abuse complained of, and not from the completion of the action which the process issued....'" <u>Id.</u> (quoting <u>Hyde Constr.</u>, 321 F.Supp. at 1207).

In her Amended Complaint, the plaintiff argues "[t]hat Defendants made illegal use of process in the wrongful filing of said suit against Plaintiff, and proceeding to Judgment against Plaintiff."  (Amended Compl. ¶ 59.)  The suit to which the plaintiff refers is the Warnock-Bridges subrogation action, where the County Court of Warren County entered a default judgment in favor of State Farm on November 22, 2006.  Therefore, the latest

---

[2]  The plaintiff cites <u>Hyde Construction Company v. Koehring Company</u>, 387 F.Supp. 702 (S.D. Miss. 1974), for support that a longer statute of limitations applies.  The Court is unpersuaded. Although the <u>Hyde Construction</u> court applied a six-year statute of limitations to an abuse of process action, the greater weight of modern authority supports application of a one-year statute of limitations to such actions.  <u>Suthoff</u>, 722 F.2d at 136 (reviewing Mississippi case law and concluding that a one-year statute of limitations applies to abuse of process actions).

that plaintiff could have timely filed her abuse of process claim
was November 22, 2007, one year after the entry of default.  The
instant action was not filed until January 7, 2008.  Therefore, the
plaintiff's abuse of process claim must be dismissed as untimely.

*C.  RICO Claim*

i.  Standing

Clinton and Stokes argue that the plaintiff lacks standing to
bring a claim under 18 U.S.C. § 1964(c).  Section 1964(c) allows
recovery by "[a]ny person injured in his business or property by
reason of a violation of section 1962."  18 U.S.C. § 1964(c)
(emphasis added).  The Court examines each of these standing
requirements - (1) injury to business or property and (2) causation
- in turn.  See Price v. Pinnacle Brands, Inc., 138 F.3d 602, 606
(5th Cir. 1998).  In a class action, the named plaintiff must show
that she personally has been injured by the defendant's predicate
acts.  See Brown v. Protective Life Ins. Co., 353 F.3d 405, 407
(5th Cir. 2003).[3]

The Court looks first to the injury requirement.  "To prevail
in a RICO suit, a plaintiff must demonstrate an injury to business
or property."  Hughes, 278 F.3d at 421 (citations omitted).  "'At
the pleading stage, general factual allegations of injury resulting

---

[3]   Until a class is certified, the lawsuit is between the
named plaintiff and the defendants.  Brown, 353 F.3d at 407 (citing
Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 659 (3d
Cir. 1998 (abrogated on other grounds)).  In the instant case, the
Court has not yet certified the class, so we look only to the
plaintiff's alleged individual injuries.

from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.'" Price, 138 F.3d at 606 (quoting Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994) (citations omitted)) (emphasis in original).

Clinton and Stokes contend that the plaintiff cannot show compensable injury to her business or property. In her Amended Class Action Complaint, the plaintiff claims the following injuries: (1) physical discomfort, mental and emotional distress and anguish; (2) damages for money paid by the plaintiff to set aside the default judgment against her in the subrogation action; and (3) damages to the plaintiff's credit rating. The Court examines severally each of these alleged injuries to determine whether they are the type of injuries appropriate to establish RICO standing.

"The phrase 'injury to business or property' excludes personal injuries." Hughes, 278 F.3d at 422 (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979)). Thus, the plaintiff's attempted recovery for damages relating to physical discomfort, mental and emotional distress and anguish are not properly brought because they relate to the plaintiff's person, rather than to her business or property. See Roberson v. Medtronic, Inc., 494 F.Supp.2d 864, 871 (W.D. Tenn. 2007) (citations omitted).

The plaintiff here also seeks recovery for damage to her credit rating. A RICO plaintiff may recover only for provable

losses; speculative injuries are not recoverable.   In re Taxable Municipal Bond Securities Litigation, 51 F.3d 518, 522-23 (5th Cir. 1995) (concluding that lost opportunity to obtain a loan was too speculative to constitute an injury for RICO purposes); see also World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc., 530 F.Supp.2d 486, 518 (S.D.N.Y. 2007).   The Court concludes that the damage to the plaintiff's credit score, if any, is speculative and not properly recoverable in the instant action.

Finally, the plaintiff has alleged injury to her property resulting from her payment of attorneys' fees to set aside the default judgment in the Bridges-Warnock subrogation action.   Courts are split as to whether attorneys' fees are properly recoverable as RICO injuries.   See Walter v. Palisades Collection, LLC, 480 F.Supp.2d 797, 804 n. 11 (E.D. Pa. 2007) (comparing views).   This Court agrees with those courts allowing litigation costs to serve as a basis for RICO standing.   "To meet the injury requirement, a plaintiff must allege 'a concrete financial loss and not mere injury to a valuable intangible property interest." Walter, 480 F.Supp.2d at 804 (quoting Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000)).   "This requirement can be satisfied by 'allegations of proof and actual monetary loss, i.e., an out-of-pocket loss.'" Id.   The Walter court concluded, and this Court concurs, that where a plaintiff is made to spend money on litigation costs to defend wrongfully filed lawsuits that those

10

costs are rightfully considered injuries for the purpose of establishing RICO standing. *Id*. In the instant case, the plaintiff has pled that she necessarily had to spend money to set aside the default judgment in the Bridges-Warnock subrogation action, an action to which she was improperly named a party. The amount paid to her legal counsel is an actual monetary loss that establishes the injury requirement for standing.

Clinton and Stokes assert that attorneys' fees and expenses incurred in defending a wrongful prosecution suit are not recoverable under RICO. As support, the defendants offer the Seventh Circuit Court of Appeals' opinion in *Evans v. City of Chicago*, 434 F.3d 916 (7th Cir. 2006), where the court did not allow a plaintiff to base his RICO suit on the fact that he incurred attorneys' fees to defend wrongfully filed criminal charges. This Court finds *Evans* distinguishable. In *Evans*, the court focused on the speculative nature of the attorneys' fees in question. *Id*. Specifically, the defendant had paid an attorney to defend him on several charges, only some of which he was convicted. *Id*. The other charges were abandoned by the prosecution. *Id*. The court determined that it would be hard to tell which portion of the fees were attributable to the wrongfully filed charges. *Id*.

By contrast, Warnock's attorneys' fees are not speculative. She hired counsel only to represent her in the subrogation action brought by the defendants. Since the plaintiff's attorneys' fees

11

are concrete, the Court concludes that they are a permissible basis for RICO standing.  In sum, the Court concludes that, although the plaintiff may not properly seek damages for physical and emotional injury or for damage to her credit rating, the plaintiff's claim of damages for defending the wrongfully filed subrogation action effectively establishes injury for purposes of RICO standing.

After concluding that the plaintiff has sufficiently pled an injury to her business or property, the Court looks at the second requirement for RICO standing - causation.  In order to have standing to bring a RICO action under 18 U.S.C. § 1964(c), a person must have been injured "'by reason of'" the wrongful acts allegedly committed by the defendant.  Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 744 (5th Cir. 1989) (quoting Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)).  The Fifth Circuit Court of Appeals has announced that "a person will be considered injured 'by reason of' a RICO violation if the predicate acts constitute (1) factual (but for) causation and (2) legal (proximate) causation of the alleged injury." Id. (citing Old Time Enterprises, Inc. v. Int'l Coffee Corp., 862 F.2d 1213, 1218 (5th Cir. 1989)).

The first part of the causation requirement of RICO standing is factual causation.  The plaintiff alleges that her injuries were the result of defendants' intentional or reckless filing of fraudulent complaints – i.e., but for these complaints, the

12

plaintiff would not have suffered injury.  Since the monetary
injuries the plaintiff claims in her complaint would not exist but
for the alleged wrongful acts, the Court concludes that the
plaintiff has satisfied the first part of the causation
requirement.  See id. at 747-48.

The second part of the causation requirement is legal
causation or proximate cause.  Proximate cause demands "some direct
relation between the injury asserted and the injurious conduct
alleged." Holmes v. Securities Investor Protection Corp., 503 U.S.
258, 268 (1992). See also Cullom v. Hibernia National Bank, 859
F.2d 1211 (5th Cir. 1988).  Here, the plaintiff asserts that the
defendants wrongfully filed a lawsuit against her.  The injury for
which she seeks recovery is her payment of expenses to litigate
those wrongfully filed suits.  Since the plaintiff's injury –
payment of attorneys' fees – is a direct result of the defendants'
allegedly wrongful acts – filing meritless lawsuits – the proximate
cause requirement is satisfied.  See Bridge v. Phoenix Bond &
Indemnity Co., 128 S.Ct. 2131 (2008).

In the memoranda supporting their motions, Stokes and Clinton
contend that the plaintiff lacks standing to bring a RICO action
because she cannot show detrimental reliance on the defendants'
acts.  However, both defendants submitted letters to the Court
after filing their briefs acknowledging the United States Supreme
Court's recent decision in Bridge v. Phoenix Bond & Indemnity

<u>Company</u>.  128 S.Ct. 2131 (2008).  In <u>Bridge</u>, the Court held that "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations."  <u>Id</u>. at 2144.  The Court did acknowledge, however, that "it may well be that a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation."  <u>Id</u>. Here, the defendants allegedly submitted knowingly meritless complaints in the Bridges-Warnock subrogation action.  The Bridges-Warnock court, relying on these false documents, entered default judgment against the plaintiff.  The plaintiff was injured as a direct result of having to defend such baseless actions.  The Court concludes that there was sufficient third-party reliance by the Bridges-Warnock court to satisfy any reliance requirement. Accordingly, as the plaintiff has pled adequately that she suffered injury to her business or property by reason of the defendants' acts, the Court concludes she has standing to bring a civil RICO claim.

<u>ii.  Merits of RICO Claim</u>

Since the Court concludes that the plaintiff has standing to bring a civil RICO action, it looks next to whether the plaintiff has properly alleged each of the elements of the RICO claim.  The following elements are common to each of the four parts of § 1962:

"1) a person who engages in 2) a pattern of racketeering activity, 3) connected to the acquisition, establishment, conduct or control of an enterprise." Crowe v. Henry, 43 F.3d 198, 204 (5th Cir. 1995) (quoting Delta Truck & Tractor, Inc. v. J.I. Case Co., 855 F.2d 241, 242 (5th Cir. 1988), cert. denied, 489 U.S. 1079 (1989) (emphasis in original)).  The Court will examine severally whether the plaintiff has pled each element to the level required to avoid a judgment on the pleadings.

   *a.  RICO "Person"*

   The first requirement of any civil RICO claim is that the claim be brought against a "RICO person."  Id. at 204 (citing Landry v. Air Line Pilots Ass'n Int'l, 901 F.2d 404, 425 (5th Cir. 1990), cert. denied. 498 U.S. 895 (1990)).  18 U.S.C. § 1961(3) defines "person" as "any individual or entity capable of holding a legal or beneficial interest in property."  No defendant has challenged his status as a RICO person, so the Court proceeds to the next element.

   *b.  Existence of an Enterprise*

   The second requirement of any civil RICO claim is that the plaintiff plead the existence of an enterprise.  Crowe, 43 F.2d at 204 (quoting Delta Truck & Tractor, 855 F.2d at 242).  As with the requirement that the plaintiff plead the involvement of a RICO person, the defendants have not challenged whether the plaintiff has adequately pled the existence of an enterprise.

15

c.  *Pattern of Racketeering Activity*

The third requirement - and the only requirement challenged by the defendants - of any RICO claim is that the plaintiff establish a pattern of racketeering activity.  <u>Crowe</u>, 43 F.2d at 204.  "'A pattern of racketeering activity requires two or more <u>predicate acts</u> and a demonstration that the racketeering predicates are <u>related</u> and amount to or pose a <u>threat of continued criminal activity</u>.'" <u>Brown v. Protective Life Ins. Co.</u>, 353 F.3d 405, 407 (5th Cir. 2003) (quoting <u>St. Paul Mercury Ins. Co. v. Williamson</u>, 224 F.3d 425, 441 (5th Cir. 2000)) (emphasis added).  Where the plaintiff cannot tie the defendants to the pattern of racketeering activity, his RICO claim is without merit.  <u>See Dennis v. General Imaging, Inc.</u>, 918 F.2d 496 (5th Cir. 1990) (dismissing RICO claim where plaintiff could not prove the underlying mail and wire fraud).

When determining whether the plaintiff has pled a pattern of racketeering activity, the Court's first inquiry is whether the plaintiff properly has alleged one of the predicate acts of racketeering activity as listed in 18 U.S.C. § 1961.  The predicate acts the plaintiff alleges concern the defendants' filing of several lawsuits which the plaintiff claims violate 18 U.S.C. § 1341 (pertaining to mail fraud) and § 1343 (pertaining to wire fraud).  Specifically, the plaintiff insists that the defendants used the United States mail and interstate wire connections to

transmit fraudulent pleadings and correspondence related to a scheme to file meritless lawsuits against the plaintiff and various other individuals.

The defendants submit that they are entitled to a judgment on the pleadings because the plaintiff has failed to allege a pattern of racketeering activity, as the acts alleged by the plaintiff - the filing of meritless lawsuits - do not constitute mail and wire fraud. Several district courts have concluded that serving litigation documents by mail (which analysis the Court determines applies equally to litigation documents transmitted by wire) cannot constitute mail (or wire) fraud. See United States v. Pendergraft, 297 F.3d 1198 (11th Cir. 2002); Daddona v. Gaudio, 156 F.Supp.2d 153 (D. Conn. 2000); Auburn Medical Center v. Andrus, 9 F.Supp.2d 1291 (M.D. Ala. 1998); and von Bulow v. von Bulow, 657 F.Supp. 1134 (S.D.N.Y. 1987). These courts have held that a plaintiff who brings a RICO action alleging only that the defendants filed false litigation documents, without more, has failed to establish a pattern of racketeering activity. Rather, the "allegations at best amount to a vague abuse of process or malicious prosecution claim." Dadonna, 156 F.Supp.2d at 162 (citing von Bulow v. von Bulow, 657 F.Supp. at 1145 ("a complaint based on nothing more than a party's filing of unjustified suits cannot fulfill the requirement that a RICO plaintiff plead a predicate act"); Nakahara v. Bal, No. 97 Civ. 2027(DLC), 1998 WL 35123, at *8 (S.D.N.Y. Jan. 30, 1998)

(same); <u>Auburn Medical Center, Inc.</u>, 9 F.Supp.2d at 1299 (same)).

"[A]llegations of malicious prosecution or abuse of process do not, on their own, suffice as predicate acts for a RICO violation." <u>Id</u>.

In the instant case, however, the plaintiff has alleged more than the mere filing of false litigation documents.  Indeed, Warnock asserts that the defendants were involved in a larger scheme to defraud multiple people, including the plaintiff.  This claim is not based only on the transmission of fraudulent litigation documents.  Rather, the plaintiff claims that the defendants not only transmitted false court documents through interstate mail and wire, but also that they transmitted other correspondence and materials relating to the scheme to defraud. Amended Compl. ¶ 27.  She avers that the transmission of these fraudulent materials and correspondence occurred several times over a period of several years.  <u>See</u> <u>Abraham v. B. J. Singh</u>, 480 F.3d 351, 356 (5th Cir. 2007) (citations omitted).  Accordingly, the Court concludes that the plaintiff has adequately pled a pattern of racketeering activity.

   *d. Elements unique to Section 1962(c)*

To survive a judgment on the pleadings as to an alleged violation of Section 1962(c), a plaintiff must plead the following: "(1) existence of an enterprise that affects interstate or foreign commerce, (2) that the defendant[s] [were] 'employed by' or 'associated with' the enterprise, (3) that the defendant[s]

18

participated in the conduct of the enterprise's affairs, and (4) that the participation was through 'a pattern of racketeering activity.'" <u>Dale v. Frankel</u>, 131 F.Supp.2d 852, 856 (S.D. Miss. 2001) (citations omitted). As indicated, the plaintiff as alleged a pattern of racketeering activity and the defendants have not challenged the existence of an enterprise. Neither have the defendants challenged the second or third elements of Section 1962(c) - whether the defendants were employed by or associated with the enterprise and whether the defendants participated in the conduct of the enterprise's affairs. Therefore, the Court concludes that the plaintiff has properly pled a violation of Section 1962(c).

   *e. Elements unique to Section 1962(d)*

   "To establish a RICO conspiracy under § 1962(d), the plaintiff[] must prove '(1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense.'" <u>Dale</u>, 131 F.Supp.2d at 860 (quoting <u>United States v. Sharpe</u>, 193 F.3d 852, 869 (5th Cir. 1999)). Here, the plaintiff has alleged that defendants State Farm, Clinton and Stokes agreed to commit mail and wire fraud and that each defendant was aware of the scheme of obtaining meritless judgments against various parties. Therefore, the Court concludes that the plaintiff has properly pled a violation of Section 1962(d).

19

iii.  Application of the Noerr-Pennington Doctrine

The defendants argue additionally that the plaintiff's claims are barred by the Noerr-Pennington doctrine, which, in light of the constitutional right to petition the government, generally provides immunity to parties who petition the government for governmental action favorable to them.  Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) and United Mine Workers of America v. Pennington, 381 U.S. 657 (1965).  The exemption extends to "efforts to obtain favorable court action through the filing of lawsuits."  Livingston Downs Racing Ass'n Inc. v. Jefferson, 192 F.Supp.2d 519, 530 (M.D. La. 2001) (citations omitted).  The doctrine originated in the antitrust complex and has been applied with restraint since its beginning. Sosa v. DIRECTV, Inc., 437 F.3d 923 (9th Cir. 2006).

As support for their argument that the Noerr-Pennington doctrine bars the plaintiffs RICO claims, the defendants offer the Ninth Circuit Court of Appeals' opinion in Sosa v. DIRECTV, Inc. 437 F.3d at 923.  In that case, the Ninth Circuit not only applied the doctrine specifically to a RICO action, but it also greatly expanded the Noerr-Pennington doctrine to apply to all federal statutes.  Id.  This Court can find no other circuit that has followed the Ninth Circuit's lead, and it declines to do so without direction from the Fifth Circuit Court of Appeals.  Accordingly, the defendants' argument that the Noerr-Pennington doctrine applies

20

to this RICO action is not well-taken.

iv.  Collateral Estoppel and Res Judicata

    The defendants argue further that the instant action is barred
by the doctrines of collateral estoppel and res judicata because
the issues raised already were decided by Mississippi state courts.
There are strict requirements for these doctrines to apply, and the
Court examines each separately.

    a.  *Collateral Estoppel*

    Also among their several arguments, the defendants seek a
judgment on the pleadings under a theory of collateral estoppel.
To invoke the doctrine of collateral estoppel, the defendants will
need to meet the following three criteria: "1) that the issue at
stake [is] identical to the one involved in the prior litigation;
2) that the issue [was] actually litigated in the prior litigation;
and 3) that the determination of the issue in the prior litigation
[was] a critical and necessary part of the judgment in that earlier
action." Palmer Exploration, Inc. v. Dennis, 759 F.Supp. 332, 334
(S.D. Miss. 1991).

    First, the defendants argue that the plaintiff's claims are
barred by the state court's denial of the plaintiff's request for
sanctions during the action to set aside the default judgment.
With this argument, the defendants fail to satisfy the second
element of collateral estoppel--that the issue was actually

litigated.  "As a general rule, an issue is 'actually litigated' only when it is properly raised by the pleadings, submitted for a determination and actually determined."  Matter of Gober, 100 F.3d 1195, 1203 (5th Cir. 1996) (citations omitted).  The court action that the defendants submit bars the present case took place in an insurance subrogation action between State Farm and Warnock.  The issues of mail and wire fraud and whether such actions amount to a RICO violation never were before the Court and, therefore, not "actually litigated".  Thus, collateral estoppel is inapplicable.

Second, the defendants assert that collateral estoppel applies because the state court in which the injunction proceeding was held determined that the subrogation pleadings appeared to be filed with a reasonable basis.  In its order granting a permanent injunction, the Circuit Court of the First Judicial District of Hinds County stated that "there is no evidence whatsoever that [Paul Clinton] intentionally sued any individuals in either lawsuit without a reasonable basis." Def.'s Answer to Amended Complaint, ex. 2. While potentially relevant to the instant action, this statement does bar the plaintiff's case.  The circuit court's order addressed the merit of only two of the several cases that the plaintiff alleges were wrongly filed.  Further, the plaintiff's RICO action is not based solely on the merit of the complaints, but instead alleges the transmission by mail and wire of a variety of fraudulent documents related to a scheme of obtaining judgments in

meritless cases.  Therefore, collateral estoppel does not entitle the defendants to a judgment on the pleadings.

    *b.  Res Judicata*

The defendants also argue that res judicata bars the plaintiff's claims.  There are four requirements for the doctrine of res judicata to bar a case: "(1) the parties must be identical in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases."  <u>Palmer</u>, 759 F.Supp. at 334.

Again, the defendants assert that the plaintiff's claims are barred by the state court's denial of the plaintiff's request for sanctions during the action to set aside the default judgment. This argument is without merit.  There was no final judgment on the merits as to the issue of the validity of the subrogation pleadings.  Therefore, collateral estoppel does not apply.

The defendants also again submit that res judicata applies because the state court in which the injunction proceeding was held determined that the subrogation pleadings appeared to be filed with a reasonable basis.  This argument fails because there is no mutuality of the parties.  The injunction action was between Clinton and Varner, Parker & Sessums.  Warnock was not a party to that action.  Accordingly, res judicata does not bar the instant case.

<u>v.  Comity, Equity and Fundamental Fairness</u>

Finally, the defendants argue that the plaintiff's claims should be barred by the principles of comity, equity and fundamental fairness.  As discussed above, the Court determines that the issues before it have not previously been decided by the Mississippi state courts, so the defendants arguments regarding comity are not well-taken.

In sum, the Court determines that the defendants are not entitled to judgment on the pleadings as to the plaintiff's RICO claim, as the plaintiff has properly pled the required elements of both Section 1962(c) and 1962(d).  Furthermore, the defendants' arguments pertaining to the <u>Noerr-Pennington</u> doctrine, res judicata, collateral estoppel and comity are without merit.  The defendants are entitled, however, to a judgment on the pleadings as to the plaintiff's abuse of process claim, as such claim is barred by the applicable one-year statute of limitations.

### III. CONCLUSION AND ORDER

Based upon the foregoing analysis and authorities,

**IT IS HEREBY ORDERED** that defendants Clinton's and Stokes' Motion for Judgment on the Pleadings [**docket entry no. 26**] is **GRANTED** as to the plaintiff's abuse of process claim.

**IT IS FURTHER ORDERED** that the defendants Clinton's and Stokes' Motion to Dismiss Plaintiff's RICO Claim [**docket entry no.**

24

**25**], which the Court construes as a Motion for Judgment on the Pleadings, is **DENIED.**

**IT IS FURTHER ORDERED** that defendant State Farm's Motion for Judgment on the Pleadings [**docket entry no. 16**] is **DENIED**.

**SO ORDERED**, this the 14th day of October 2008.

<u>    s/ David Bramlette    </u>

**UNITED STATES DISTRICT JUDGE**
