UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
WESTERN DIVISION

TAMRA WARNOCK                                        PLAINTIFF


VERSUS                        CIVIL ACTION NO. 5:08-cv-001-DCB-JMR


STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, J. PAUL CLINTON
AND STOKES & CLINTON, P.C.                          DEFENDANTS

## OPINION AND ORDER

Before this Court is Plaintiff Tamra Warnock's Motion for
Class Certification [docket entry no. 157].  Also before the Court
are Warnock's Motion for Leave to Exceed the Page Limitation of
Local Rule 7(b)(5) for her Reply in support of that Motion [docket
entry no. 167] and Warnock's Motion to Strike Affidavit of Dale
Jones, filed by Defendant State Farm [docket entry no. 169].
Having carefully considered the Motions, responses thereto, and
applicable statutory and case law, the Court finds and orders as
follows:

## I.  BACKGROUND AND PROCEDURAL HISTORY

Defendant State Farm Mutual Automobile Insurance Company is an
automobile insurer whose services include providing coverage for
its customers when they are involved in automobile accidents.
After paying claims to its customers, State Farm often institutes
subrogation actions to pursue any legal claims its customers may
have against the other parties at fault in the accidents.

Defendant Stokes & Clinton, P.C., is a law firm that often represents State Farm in such subrogation actions and Defendant J. Paul Clinton is the partner in that firm who primarily handles such actions.

Billy Bridges, a State Farm policyholder, was involved in an automobile accident with Jake Foster, a minor, on June 25, 2001. The vehicle driven by Foster in the accident was owned by the Plaintiff, Tamra Warnock. At the time of the accident, Foster was in a relationship with Warnock's daughter and was a daily visitor at Warnock's home. The parties dispute whether Foster lived at Warnock's home and whether he had permission to drive the vehicle. Bridges filed a claim under his State Farm insurance policy and State Farm paid Bridges some portion of the losses he incurred as a result of the accident. After paying Bridges' claim, State Farm, represented by Stokes & Clinton, filed a subrogation action against both Foster and Warnock, as Foster's guardian, to recover the amount it paid to Bridges. That action, filed in the County Court of Warren County, Mississippi, alleged that Warnock and Foster were both "operators" of the vehicle involved in the accident with Bridges. Warnock was served with process in the Warren County action on October 12, 2006. State Farm obtained a default judgment against her on November 22, 2006, which it later recorded and attempted to collect.

On January 16, 2007, Warnock sought to set aside the default

judgment.  In addition, she sought damages and sanctions against Stokes & Clinton for filing a "deliberately misleading and false statement" because the subrogation complaint alleged that she was the operator of the vehicle.  Specifically, Warnock claimed that State Farm and its attorneys should have known that she was not the driver of the vehicle and that she was not the guardian of the driver, Foster.  The County Court of Warren County set aside the default judgment on February 26, 2007, but denied Warnock's request for sanctions against Stokes & Clinton.  The Warren County Order setting aside the judgment did not state the court's reasons for doing so.

On January 7, 2008, Warnock filed her initial complaint in this action, alleging that Defendants are liable under 18 U.S.C. § 1964(c) for violating various provisions of the Racketeer Influenced and Corrupt Organizations ("RICO") Act.  Specifically, Warnock claims that Defendants violated 18 U.S.C. §§ 1962(c) & (d), which prohibit participating or conspiring to participate in "a pattern of racketeering activity or collection of unlawful debt." The underlying racketeering activity alleged by Warnock is mail and wire fraud in violation of 18 U.S.C. §§ 1341 & 1343 through Defendants' filing a complaint alleging that she was the operator of the vehicle when they knew she was not driving at the time of the accident and thus could not be liable.  On February 18, 2008, Warnock filed an Amended Class Action Complaint [docket entry no.

11] alleging RICO claims on behalf of herself and "all persons who were not drivers or operators of vehicles involved with insureds of State Farm who were nevertheless sued by State Farm and Clinton and Clinton and Stokes [sic] wrongfully seeking money damages." Amended Compl. ¶ 64.  This Court denied Defendants' Motion to Dismiss and Motion for Judgment on the pleadings on October 14, 2008 [docket entry no. 38].

The parties then conducted class discovery.  Defendants contend that the evidence obtained reveals that Defendants did not have uniform practices with respect to their subrogation claims and that Stokes & Clinton investigated each one before determining whether to file suit and if so, how to draft the complaint. Defendants admit, however, that because of the high volume of subrogation lawsuits that Stokes & Clinton filed on behalf of State Farm, Stokes & Clinton often used form complaints.  Stokes & Clinton referred to the form complaint at issue in this litigation (which described both non-driver owners and drivers as "operators") as the "MT2 Complaint."  Warnock contends that the MT2 Complaint was necessarily false because it is common sense knowledge that two individuals cannot simultaneously operate a vehicle.  Warnock further argues that the use of the form MT2 Complaint indicates that Defendants did not sufficiently investigate the underlying facts of the various subrogation actions.  Stokes & Clinton argue that it used different form complaints depending on the facts of

4

the automobile accident at issue.  It further argues that in the instances it used the MT2 Complaint, the word "operator" was intended to be broad enough to cover both a driver and a non-driving owner, in the latter case indicating legal and practical control over the vehicle, for example, where a company "operates" a delivery truck driven by an employee.  Warnock now moves, pursuant to Federal Rule of Civil Procedure 23, to certify the following class of individuals:

> All persons who were owners of vehicles involved in accidents with insureds of State Farm but who were not operators of those vehicles and were nevertheless sued by State Farm, through its counsel J. Paul Clinton and/or Stokes & Clinton, P.C., in a subrogation action alleging that the owner was an operator and against whom a judgment was obtained.

## II.  <u>STANDARD FOR CLASS CERTIFICATION</u>

Under Rule 23(a), a plaintiff seeking to certify a class must satisfy four threshold requirements: "(1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class)." <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 613 (1997) (citing Fed. R. Civ. P. 23(a)).

In addition to satisfying Rule 23(a)'s prerequisites, parties

seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). Id. at 614. Here, Warnock seeks to certify the class under Rule 23(b)(3), which demands two further requirements: (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy. Id. at 615. Warnock bears the burden of proving each of the four elements of Rule 23(a) and the two elements of Rule 23(b)(3). Applewhite v. Reichhold Chems., Inc., 67 F.3d 571, 573 (5th Cir. 1995).

### III.  ANALYSIS

Defendants argue that Warnock has not met her burden to show that the required elements for class certification are met for multiple reasons: she has not established any of the four required elements of Rule 23(a); she has not established that common issues predominate over individual ones and that a class action is the superior method for adjudicating these claims as required by Rule 23(b)(3); the proposed class is overbroad because it includes persons who (1) were not defrauded and (2) have no injury; and the proposed class is comprised of plaintiffs whose claims are barred by res judicata and thus over whom this Court has no jurisdiction pursuant to the Rooker-Feldman doctrine.

### A.  Rule 23(b)(3)

Because the thresholds to satisfy the requirements of Rule

6

23(a) are not high, <u>Gene and Gene LLC v. Biopay LLC</u>, 541 F.3d 318, 325 (5th Cir. 2008) (citing <u>James v. City of Dallas</u>, 254 F.3d 551, 557 (5th Cir. 2001)), this Court will begin its analysis with the more demanding requirements of Rule 23(b)(3).

    **1.  Predominance**

Rule 23(b)(3)'s predominance requirement tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Amchem Prods.</u>, 521 U.S. at 622.  The standard for certification imposed by Rule 23(b)(3) is more demanding than the commonality requirement of Rule 23(a), and as such, mandates caution, particularly where "individual stakes are high and disparities among class members great." <u>Id.</u> at 625; <u>see also</u> Fed. R. Civ. P. 23 advisory committee's note ("In the situations to which this subdivision [Rule 23(b)(3)] relates, class-action treatment is not as clearly called for as in those described above, but it may nevertheless be convenient and desirable depending upon the particular facts.").

Determining whether the plaintiffs can clear the predominance hurdle set by Rule 23(b)(3) also requires the Court to consider "how a trial on the merits would be conducted if a class were certified." <u>Sandwich Chef of Texas, Inc. v. Reliance Nat'l Ins. Indem. Co.</u>, 319 F.3d 205, 218 (5th Cir. 2003). This, in turn, "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then

7

determining whether the issues are common to the class," a process that ultimately "prevents the class from degenerating into a series of individual trials." O'Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 738 (5th Cir. 2003).

Warnock asserts two civil RICO claims against Defendants under 18 U.S.C. § 1964(c), each based on the theory that they engaged in a pattern of mail and wire fraud against non-driver owners of vehicles involved in accidents with State Farm insureds.  As addressed in the Court's October 14, 2008 Order, § 1964(c) requires a finding that a person was "injured in his business of property by reason of a violation of section 1962," which is often referred to as "standing."  Price v. Pinnacle Brands, Inc., 138 F.3d 602, 606 (5th Cir. 1998).  In other words, standing requires a two-part analysis of whether a plaintiff has shown: (1) injury to property; and (2) causation.  Id. at 606.   After the plaintiff establishes standing, it must then sufficiently allege the elements of the substantive RICO violation under 18 U.S.C. § 1962, which are: (1) a person who engages in; (2) a pattern of racketeering activity; (3) connected to the acquisition, establishment, conduct or control of an enterprise.  Crowe v. Henry, 43 F.3d 198, 204 (5th Cir. 1995).  Defendants argue that individual issues predominate over common ones and preclude certification of the proposed class because the issues of causation, damages, and falsity of the subrogation complaints require individualized proof.  The Court

8

will address these issues in turn.

### a. Causation/Reliance

Defendants argue that establishing causation for the RICO claims alleged here will require an individual inquiry into whether Stokes & Clinton and J. Paul Clinton knew that the "operator" allegations in the complaints that they filed against non-driver owners were false in each case. The Fifth Circuit has consistently declined to certify RICO class actions predicated on mail and wire fraud because individual issues of causation (which generally take the form of reliance in a RICO fraud claim) predominate over common issues. Sandwich Chef, 319 F.3d at 219 ("The pervasive issues of individual reliance that generally exist in RICO fraud actions create a working presumption against class certification."); Patterson v. Mobil Oil Corp., 241 F.3d 417, 419 (5th Cir. 2001) ("Claims for money damages in which individual reliance is an element are poor treatments for class treatment, at best. We have made that plain."); Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 978 ("the individual findings of reliance necessary to establish RICO liability and damages preclude not only (b)(2) certification of this class under RICO, but (b)(3) certification as well").

The Fifth Circuit's staunch position against civil RICO fraud class actions contrasts with the pattern in other circuits where courts often certify RICO fraud class actions by holding that reliance can be presumed under certain circumstances and thus need

9

not be proved individually.  E.g., Carnegie v. Household Int'l,
Inc., 376 F.3d 656,661 (7th Cir. 2004)(affirming certification of
class of millions of consumers alleging RICO violations arising out
of income tax refund loans); Chisolm v. TranSouth Fin. Corp., 184
F.R.D. 556, 562-63 (E.D.Va. 1999) (certifying class of consumers
alleging RICO violations arising out of "churning" scheme in
connection with financing of vehicles).  Representative of such
decisions is Klay v. Humana, Inc., 382 F.3d 1241, 1259 (11th Cir.
2004), in which the plaintiffs alleged that a number of health
maintenance organizations had conspired in a scheme to cheat
doctors by underpaying billed reimbursements.  Id.  The Eleventh
Circuit held that the plaintiffs could show class-wide reliance
circumstantially, stating "[i]t does not strain credulity to
conclude that each plaintiff, in entering into contracts with the
defendants, relied upon the defendants' representations and assumed
they would be paid the amount they were due."  Id.

     In 2008, the Supreme Court held that though causation is
required to establish a civil RICO claim under § 1964(c), causation
can be shown in ways other than first-party reliance by the
plaintiff.  Bridge v. Phoenix Bond & Indem. Co., 533 U.S. 639, 648
(2008).  There, the Respondents filed RICO claims arising out of
the Petitioners' alleged misrepresentations to officials of Cook
County, Illinois in connection with the County's auction to sell
its tax liens on delinquent taxpayers' property.  Respondents and

10

Petitioners were competitors in the tax lien auction and Respondents argued that Petitioners' misrepresentations had allowed them to gain an advantage over Respondents in the auction. Petitioners argued that Respondents could not establish the required element of reliance to state a mail-fraud based RICO claim because the misrepresentations at issue were made to Cook County and not to Respondents. The Supreme Court disagreed and held that because "the common-law requirement of justifiable reliance plainly has no place in the mail, wire, or bank fraud statutes," first-party reliance likewise has no place in civil RICO actions predicated upon those crimes. <u>Id.</u> at 648-49 (citing <u>Neder v. United States</u>, 527 U.S. 1, 24-25 (1999)).

The Court pointed out that a person can be injured "by reason of" a pattern of mail fraud, as required by § 1964(c), even without relying personally on the fraudulent misrepresentations. <u>Id.</u> at 649. The <u>Bridge</u> Respondents instead alleged third-party reliance, *i.e.,* that Cook County had relied on Petitioners' misrepresentations, thereby harming Respondents. The Court emphasized that while first-person reliance *by the plaintiff* was not necessary, "none of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations." <u>Id.</u> at 658 (emphasis in original). Indeed, "in most cases, the plaintiff will not be able to establish even

11

but-for causation if no one relied on the misrepresentation." Id.

The Fifth Circuit has not addressed Bridge's impact on the presumption against class certification for RICO claims based on mail and wire fraud. This Court's reading of Bridge and the relevant Fifth Circuit precedent is that class certification may now be appropriate where, as in Bridge, causation is alleged through third-party reliance by a single entity (there, Cook County) and reliance would not need to be individually determined for each class member. But that is not the case here. Warnock does proceed on a theory of third-party reliance in that the alleged misrepresentations at issue were made not to the proposed class members but to judges in the various Mississippi state courts in which State Farm asserted subrogation claims using the MT2 Complaint. See October 14, 2008 Order at 14. But this case is clearly distinguishable from Bridge in that the relevant third-party is different for each class member and that the causation determination depends heavily on the circumstances of each underlying automobile accident in relation to the allegations of the MT2 Complaint.

The facts of the automobile accident at issue in Warnock's case illustrate the myriad individual issues involved in determining causation here. The police report for the automobile accident between State Farm's insured Bridges and Foster (who was driving Warnock's vehicle) listed Foster as having the same address

and same telephone number as Warnock.  The report also identified both Warnock and Foster as the driver of the vehicle at different places in the report, leaving the true driver of the vehicle unclear.[1]  Accordingly, assuming for these purposes that the judgment was litigated and not a default judgment, the Warren County judge in the subrogation action could have understood the "operating" allegation to mean that Warnock was driving the vehicle at the time of the accident and found that allegation to be supported by the police report's notation that she was the driver. Alternatively, the Warren County judge may have understood that Warnock was a non-driver owner but held her liable for the accident through a theory of negligent entrustment of her vehicle to Foster given that he apparently resided at her address.  Either of these two readings of the MT2 Complaint is supported by the evidence and thus in these instances, the complaint would not be baseless.

Warnock advances a third understanding of the "operating" allegation, that Warnock was the driver of the vehicle despite clear evidence that Foster was the driver and thus that the Warren County judge was misled to find Warnock liable for subrogation. While this third understanding is certainly possible, the only way to determine at trial what each judge took the word "operating" to mean in each subrogation action would be through testimony from the

---

[1] All parties seem to agree for the purposes of this litigation that Warnock was *not* the driver of the vehicle at the time of the accident, despite the ambiguity in the police report.

individual judge as to his or her understanding of the facts and evidence of each underlying automobile accident.[2]  In other words, to try a class action in this case would require individualized proof of reliance which dooms class certification under longstanding Fifth Circuit precedent.  <u>Sandwich Chef</u>, 319 F.3d at 219; <u>Patterson</u>, 241 F.3d at 419; <u>Bolin</u>, 231 F.3d at 978.  The fact that the reliance here is third-party, as permitted in <u>Bridge</u>, is of no moment.

       **b.   Damages**

       Defendants also argue that a trial on the merits would require individualized proof of damages.  Warnock asserts as damages the fact that she had a judgment entered against her and the attorneys' fees she spent to set aside that judgment.  Amended Compl. ¶¶ 47, 52.  Ignoring the fact that most proposed class members likely did not hire attorneys to seek to have the judgments against them set aside, it is clear that determining the amount of damages for each potential class member would require individualized determinations regarding the amounts of the judgment against them and any additional monetary losses resulting from those judgments (or from setting them aside).  The Fifth Circuit has held that "the

---

       [2] The Order of the Warren County Court setting aside the default judgment against Warnock in the subrogation action [docket entry no. 26-3 at 39] does not indicate its reasons for doing so, although Defendant Stokes & Clinton represents to this Court that it consented to the judgment being set aside.  Therefore, this Court can only speculate as to the Warren County Court's understanding of the "operating" allegation.

necessity of calculating damages on an individual basis, by itself, can be grounds for not certifying a class." Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp., 100 Fed.Appx 296, 297 (5th Cir. 2004) (citing Bell Atlantic Corp. v. AT&T Corp., 339 F.3d 294, 301 (5th Cir. 2003), O'Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 745 (5th Cir. 2003), and Allison v. Citgo Petroleum Corp., 151 F.3d 402, 419) (5th Cir. 1998)). Warnock relies on Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d 290, 298 (5th Cir. 2001), in which the Fifth Circuit upheld a district court's certification of a class despite damages requiring individualized determination and argues that it stands for the proposition that individualized damage issues do not defeat predominance. But the Fifth Circuit specifically rejected that notion, stating that "Bertulli merely held that the district court had not abused its discretion; it does not hold that the calculation of damages can never be a grounds for denying class certification." Piggly Wiggly, 100 Fed.Appx. at 298. Moreover, Bertulli is distinguishable on its facts because "virtually every issue prior to damages [was] a common issue." Bertulli, 242 F.3d at 298. That is certainly not the case here, as the above discussion regarding causation makes clear.

### c. Falsity of the Subrogation Complaints

For much the same reason that the Court finds that reliance requires individualized proof, the existence of fraud *vel non* would

require individualized inquiry into whether the allegations of each underlying subrogation action were false.  This is because whether the "operating" allegations were fraudulent and constituted mail or wire fraud turns on the facts of the automobile accidents themselves and whether there was any basis for an allegation that the non-driver owner operated the vehicle involved in the accident with a State Farm insured.  Assuming without deciding that Warnock is correct and "operator" necessarily means driver and not one in legal control of a vehicle, it may be true in some cases that Defendants knew the owner was not driving and thus the "operating" allegation was intentionally false and misleading.  But it may also be true that, as in Warnock's case where an ambiguous police report listed her *and* Foster as the driver of her vehicle, sufficient evidence existed to support the conclusion that the owner was also the driver and thus the "operating" allegation was true (or at least not intentionally false).  Accordingly, to determine at a trial whether Defendants made intentionally false or misleading statements regarding each proposed class member would require individualized proof.

In sum, the Court agrees with Defendants that the issues of causation, damages, and falsity of the subrogation complaints would require individualized determination here and thus individual issues predominate over common ones in this proposed class.  A trial on the merits of this action would devolve into mini-trials

16

regarding the facts of the automobile accident in which each class member's vehicle was involved, which would undermine the efficiencies intended by the class action procedure.  Indeed, the fact that any one of these issues would require individualized proof could in itself defeat class certification.  E.g., Piggly Wiggly, 100 Fed.Appx at 297 (necessity to prove individualized damages undermines predominance); Sandwich Chef, 319 F.3d at 219 (necessity to prove individualized reliance undermines predominance).  The fact that there are at least three distinct issues that require individualization here certainly does so.[3]

## 2. Superiority

This Court's finding that multiple individual issues exist also impacts a determination on superiority because "the greater the number of individual issues, the less likely superiority can be established." Castano v. Am. Tobacco Co., 84 F.3d 734, 745 n.19 (5th Cir. 1996)(citing In re Am. Medical Sys., 75 F.3d 1069, 1084-85 (6th Cir. 1996)).  Here, there are at least three issues that would require individualized proof at a trial on the merits of the proposed class which indicates that a class action would be unmanageable and therefore an inferior method of adjudication. Steering Comm. v. Exxon Mobil Corp., 461 F.3d 598, 604-605 (5th

---

[3] This Court does not dispute that certain common issues do exist here, for example, with respect to whether Defendants' conduct was a pattern of racketeering activity (excluding whether the activity was in fact fraudulent) and whether a RICO enterprise existed.

Cir. 2008); <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402, 419 (5th Cir. 1998).

Moreover, the "most compelling" ground for finding superiority of the class procedure is a negative value suit, <u>Castano</u>, 84 F.3d at 748, which does not exist here.  There is nothing to indicate that the RICO claims alleged would cost more to litigate than the individual plaintiffs could recover.  Warnock asserts that proposed class members' claims are "relatively small," and that efficiencies could be achieved in regards to attorneys' fees and costs through the class action mechanism but that does not mean these civil RICO claims are negative value suits.  Indeed, disputes arising out of automobile accidents are routinely brought by individual claimants and the exact subrogation judgments disputed by the proposed class action were litigated by State Farm on an individual basis. Additionally, the civil RICO statute under which Warnock proceeds, 18 U.S.C. § 1964(c), provides for treble damages and attorneys' fees, both of which undercut any suggestion of a negative value suit.  <u>Castano</u>, 84 F.3d at 748 (fact that statute under which claims asserted allowed for attorneys' fees argued against existence of a negative value suit).  Because there are multiple individual issues at stake in the proposed class claims and these are not negative value suits, Warnock has also failed to establish superiority as required by Rule 23(b)(3).

**B.   Overbreadth/Typicality as Required by Rule 23(a)(3).**

Having determined that the proposed class fails to meet the predominance requirement of Rule 23(b)(3) for multiple reasons, a fact that in itself forbids class certification, the Court need not address the threshold requirements of Rule 23(a).   It will nonetheless briefly address Rule 23(a)(3)'s typicality requirement because the preceding discussion is determinative of this issue as well.   Defendant State Farm argues that class certification should be denied because the proposed class is overbroad, and the overbreadth cannot be cured because it is impossible to objectively define the victims of the alleged fraud here.   These arguments bear on Rule 23(a)(3)'s requirement of typicality[4] with respect to the proposed class because "'if proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims.'" <u>Ruiz v. Stewart Assoc., Inc.</u>, 167 F.R.D. 402, 405 (N.D. Ill. 1996) (quoting <u>Hickey v. Great W. Mortg. Corp.</u>, 1995 WL 121534, at *8 (N.D. Ill. Mar. 17, 1995)).

---

[4] Defendants contend, citing, *inter alia*, <u>DeBremaekar v. Short</u>, 433 F.2d 733, 734 (5th Cir. 1970), that there is a threshold requirement of an "objectively ascertainable" class implicit in Rule 23(a), separate and apart from the four elements listed at 23(a)(1)-(4).   More recent authorities suggest that concerns regarding the ascertainability of the proposed class are "handled more properly under requirements governing pleading, standing, and Rule 23 prerequisites" as opposed to implying any threshold requirements to Rule 23(a).   1 William B. Rubenstein et al., <u>Newberg On Class Actions</u> § 2.3 (4th ed. 2010).

The Court agrees with Defendants that the proposed class is overbroad because it includes people who may not have been the victims of mail or wire fraud and thus who may not have RICO claims against Defendants.  Again, the proposed class is:

> All persons who were owners of vehicles
> involved in accidents with insureds of State
> Farm but who were not operators of those
> vehicles and were nevertheless sued by State
> Farm, through its counsel J. Paul Clinton
> and/or Stokes & Clinton, P.C., in a
> subrogation action alleging that the owner was
> an operator and against whom a judgment was
> obtained.

Thus, the proposed class includes every non-driver owner against whom a judgment was obtained through the use of an "operator" allegation.  As discussed above, there are any number of ways in which legitimate, non-fraudulent judgments could have been obtained against non-driver owners of vehicles, including where the owner negligently entrusted the vehicle to the driver and  where the evidence supported that the owner was, in fact, the driver.[5] Warnock's memoranda to this Court in support of her Motion for Class Certification illustrate the problem.  For example, Warnock argues that the class includes "only persons against whom Defendants obtained judgments by engaging in mail and wire fraud and by filing complaints falsely alleging that they were operating

---

[5] Because it is not necessary for the purposes of this analysis, this Court does not reach the theory advanced by Defendants that "operate" does not mean drive but instead indicates legal control over the vehicle.

a vehicle involved in an accident with a State Farm insured." Pl. Rebuttal [docket entry no. 168] at 3-4. But the proposed class does not contain any reference to fraud or false allegations and thus could include any number of persons against whom the "operating" allegation was neither false nor fraudulent.

The Court further agrees that the proposed class could not be limited to only those persons as to whom the "operating" allegation was false or fraudulent by any objective criteria. The salient inquiry in all Rule 23(a) analysis is whether "it is administratively feasible for the court to determine whether a particular individual is a member." 7A Charles Alan Wright et al., Federal Practice and Procedure § 1760 (3d ed. 2010). This requires that the class be defined "in objective terms" and without reference to "criteria that are subjective or depend on the merits of the claim." Federal Judicial Center, Manual for Complex Litigation § 32.42 (4th ed., 2008). Here, if the proposed class were only people as to whom the "operating" allegation was false (as Warnock suggests in her Rebuttal), then the bounds of the class would depend on the merits of the underlying RICO claim, which is impermissible under Rule 23(a). Accordingly, this Court doubts that the proposed class could be redefined in a way that satisfies the Rule.

### III.   CONCLUSION

The Court agrees with Defendants that the Motion to Certify

Class should be denied because individual issues predominate over common ones, because a class action is not the superior method of adjudication for these claims, and because the proposed class is overbroad in that it includes persons as to whom the subrogation claims may not have been fraudulent.   Accordingly, it does not reach Defendants' remaining arguments as to overbreadth for lack of injury, res judicata, or the requirements of Rule 23(a)(1),(2), and (4).

     For the foregoing reasons,

     **IT IS HEREBY ORDERED THAT** Plaintiff's Motion to Certify Class [docket entry no. 157] is **DENIED**.

     **IT IS FURTHER ORDERED THAT** Plaintiff's Motion for Leave to Exceed the Page Limitation of the Local Rules regarding her Reply [docket entry no. 167] is **GRANTED**.

     **IT IS FURTHER ORDERED THAT** Plaintiff's Motion to Strike Affidavit of Dale Jones [docket entry no. 169] is **MOOT** because the Court did not need to reach the facts at issue in the affidavit in order to rule on the class certification motion.


     **SO ORDERED AND ADJUDGED** this the 24th day of March 2011.


                           s/ David Bramlette
                         **UNITED STATES DISTRICT JUDGE**