```
            UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
                  WESTERN DIVISION
```

TAMRA WARNOCK                                               PLAINTIFF


VERSUS                         CIVIL ACTION NO. 5:08-cv-001-DCB-JMR


STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, J. PAUL CLINTON
AND STOKES & CLINTON, P.C.                                 DEFENDANTS

## OPINION AND ORDER

Before this Court are the Motions for Summary Judgment of Defendants State Farm Mutual Automobile Insurance Company [docket entry no. 183] and J. Paul Clinton and Stokes & Clinton, P.C. (the "Clinton Defendants") [docket entry no. 181]. Having carefully considered the Motions, responses thereto, and applicable statutory and case law, the Court finds and orders as follows:

### I.  PROCEDURAL HISTORY

On January 7, 2008, Warnock filed her initial complaint in this action, alleging that Defendants are civilly liable under 18 U.S.C. § 1964(c) for violating various provisions of the Racketeer Influenced and Corrupt Organizations ("RICO") Act. Specifically, Warnock claims that Defendants violated 18 U.S.C. §§ 1962(c) & (d), which prohibit participating or conspiring to participate in "a pattern of racketeering activity or collection of unlawful debt." The underlying racketeering activity alleged by Warnock is mail and wire fraud in violation of 18 U.S.C. §§ 1341 & 1343.  Warnock also

asserted an abuse of process claim against Defendants. On February 18, 2008, Warnock filed an Amended Class Action Complaint [docket entry no. 11] alleging those RICO and abuse of process claims on behalf of herself and "all persons who were not drivers or operators of vehicles involved with insureds of State Farm who were nevertheless sued by State Farm and Clinton and Clinton and Stokes [sic] wrongfully seeking money damages." Amended Compl. ¶ 64. This Court denied Defendants' Motions to Dismiss and for Judgment on the Pleadings as to the RICO claims on October 14, 2008, but granted the motion as to the abuse of process claim [docket entry no. 38]. This Court denied the Motion for Class Certification on March 24, 2011. Accordingly, the only claims remaining are Warnock's two individual RICO claims against Defendants State Farm, J. Paul Clinton, and Stokes & Clinton. All Defendants now move for summary judgment.

## II. FACTS

Defendant State Farm is an automobile insurer whose services include providing coverage for its customers when they are involved in automobile accidents. After paying claims to its customers, State Farm often institutes subrogation actions to pursue any legal claims its customers may have against the other parties at fault in the accidents. Defendant Stokes & Clinton, P.C., is a law firm that often represents State Farm in such subrogation actions and Defendant J. Paul Clinton is the partner in that firm who primarily

handles such actions.

Billy Bridges, a State Farm policyholder, was involved in an automobile accident with Jake Foster, a minor, on June 25, 2001. The vehicle driven by Foster in the accident was owned by Plaintiff, Tamra Warnock. At the time of the accident, Foster was in a relationship with Warnock's daughter and was a daily visitor at Warnock's home. The parties dispute whether Foster lived at Warnock's home and whether he had permission to drive the vehicle. Bridges filed a claim under his State Farm insurance policy and State Farm paid Bridges some portion of the losses he incurred as a result of the accident.

After paying Bridges' claim, State Farm, represented by Stokes & Clinton, filed a subrogation action against both Foster and Warnock, as Foster's guardian, to recover the amount it paid to Bridges. That action, filed in the County Court of Warren County, Mississippi, alleged that Warnock and Foster were both "operators" of the vehicle involved in the accident with Bridges. Defendants argue that they used the word "operating" to encompass two possible scenarios regarding how the accident occurred: first, that Warnock was personally driving the vehicle; and second, that Warnock had negligently entrusted the vehicle to Foster. Though the parties now agree that Warnock was not driving the vehicle and Foster was, Defendants argue that at the time the subrogation complaint was filed, the evidence supported both possible scenarios and thus

there was a good faith basis for the broad "operating" allegation. Warnock was served with process in the Warren County action on October 12, 2006. State Farm obtained a default judgment against her on November 22, 2006, which it later recorded and attempted to collect.

On January 16, 2007, Warnock sought to set aside the default judgment. In addition, she sought damages and sanctions against Stokes & Clinton for filing a "deliberately misleading and false statement" because the subrogation complaint alleged that she was the operator of the vehicle. Specifically, Warnock claimed that State Farm and its attorneys should have known that she was not the driver of the vehicle and that she was not the guardian of the driver, Foster. The County Court of Warren County set aside the default judgment on February 26, 2007, but denied Warnock's request for sanctions against Stokes & Clinton. The Warren County Order setting aside the judgment did not state the court's reasons for doing so. Warnock then filed the instant action.

Warnock's remaining claims against Defendants are two civil RICO claims, each based on the theory that they engaged in a pattern of mail and wire fraud by suing Warnock alleging that she was the "operator" of the vehicle, despite knowing that she was not driving the vehicle at the time of the accident with Bridges.[1] The

---

[1] In her Complaint, Warnock also asserted a claim for abuse of process but the Court dismissed it as time-barred in its October 14, 2008 Order [docket entry no. 38].

4

first RICO claim alleges a violation of 18 U.S.C. § 1962(c), which requires proof of three elements: (1) a person who engages in; (2) a pattern of racketeering activity; (3) connected to the acquisition, establishment, conduct or control of an enterprise. <u>Crowe v. Henry</u>, 43 F.3d 198, 204 (5th Cir. 1995). Warnock's second RICO claim is that Defendants violated § 1962(d) which prohibits a conspiracy to violate any of the other subsections of § 1962 (here, Warnock alleges that Defendants conspired to violate § 1962(c)). Thus, to prove her second claim, Warnock must prove all of the elements for a violation of § 1962(c) as well as the existence of a conspiracy.

All Defendants move for summary judgment on the grounds that: (1) filing false litigation documents is not a "predicate act" of mail or wire fraud that could sustain RICO liability; (2) the subrogation action filed against Warnock by State Farm was not false or fraudulent and thus is not a "predicate act" of mail or wire fraud that could sustain RICO liability; and (3) the facts do not establish a valid enterprise as required for RICO liability. The Clinton Defendants move on the additional grounds that: (4) the facts do not support the existence of a threat of continued criminal activity; (5) the facts do not support the existence of a conspiracy as required for RICO liability under § 1962(d); and (6) the Noerr-Pennington Doctrine bars Warnock's claim. Defendant State Farm additionally argues that: (7) Warnock's injury is not a

result of the alleged falsity of the subrogation action; and (8) Warnock's claim, if at all, is an abuse of process claim that is barred by the applicable statute of limitations.  This Court will address these arguments in turn.

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted).  The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d

377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. The non-movant must instead come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly rendered when the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### IV.   ANALYSIS

**A.   Whether Defendants' Filing of the Allegedly False Subrogation Complaint Was a Predicate Act to Sustain RICO Liability.**

As noted above, to prove a violation of 18 U.S.C. § 1964(c), one of the required elements is a pattern of racketeering activity. Crowe, 43 F.2d at 204. "'A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity.'" Brown v. Protective Life Ins. Co., 353 F.3d 405, 407 (5th Cir. 2003) (quoting St. Paul Mercury

7

Ins. Co. v. Williamson, 224 F.3d 425, 441 (5th Cir. 2000)). The predicate acts sufficient to constitute racketeering activity are enumerated in 18 U.S.C. § 1961. Here, the predicate acts alleged by Warnock are violations of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), both of which are listed as predicate acts in § 1961. Essentially, Warnock alleges that the subrogation action filed by Defendants against Warnock was fraudulent because they knew that Warnock was not the "operator" of the vehicle involved in the accident with Bridges. Accordingly, Warnock argues that the filing of the subrogation complaint and its transmittal constituted mail and wire fraud.

Defendants argue that the filing and transmittal of baseless lawsuits cannot, as a matter of law, constitute mail or wire fraud. United States v. Pendergraft, 297 F.3d 1198 (11th Cir. 2002); Daddona v. Gaudio, 156 F.Supp.2d 153 (D. Conn. 2000); Auburn Med. Ctr. v. Andrus, 9 F.Supp.2d 1291 (M.D. Ala. 1998); von Bulow v. von Bulow, 657 F.Supp. 1134 (S.D.N.Y. 1987). Instead, RICO claims predicated on baseless litigation are simply "artfully pleaded claims for malicious prosecution." Pendergraft, 297 F.3d at 1208; Daddona, 156 F.Supp.2d at 162 (same). Defendants unsuccessfully made this same argument in their Motions to Dismiss but this Court held that Warnock had alleged more than the mere filing and transmittal of false litigation documents. October 18, 2008 Order at 18. Because Warnock had alleged that the Defendants transmitted

additional correspondence and materials relating to the scheme to defraud, see Amended Compl. ¶ 27, this Court concluded that Warnock had adequately pleaded the predicate acts of mail and wire fraud and thus a pattern of racketeering activity. Now, at the summary judgment stage, Defendants assert that Warnock has produced no evidence during discovery of the transmittal of any additional correspondence or materials, as alleged in the Amended Complaint. Instead, Defendants argue that the undisputed summary judgment evidence reveals that the only correspondence that Warnock received from Defendants were court filings and litigation documents. Indeed, Warnock testified at her deposition that the "fraudulent materials" allegation in her Complaint meant the "court papers," and the "fraudulent correspondence" allegation referred to testimony by State Farm representatives in state court that Warnock was driving the car.

Warnock has virtually no response to this or any of Defendants' arguments in her summary judgment papers. Instead, Warnock's Opposition to the Motion for Summary Judgment is a recitation of selected allegations of the Amended Complaint, with citation to certain deposition excerpts that apparently support those allegations. Warnock cites only one case in her 30 page Opposition and does not directly address any of the Defendants' legal or factual arguments. As relevant to Defendants' argument regarding additional fraudulent materials or correspondence,

Warnock cites no evidence that supports the existence of such. Warnock's allegations related to fraudulent materials and correspondence are contained in Paragraph 27 of the Amended Complaint. In her discussion of that paragraph in her Opposition, Warnock cites to deposition testimony of State Farm employees about their general practices related to the filing of subrogation claims but cites to no testimony regarding the subrogation claim against Warnock specifically or the materials or correspondence that she actually received. Thus, Warnock has submitted no evidence to rebut her own deposition testimony that she received no correspondence or materials from State Farm other than litigation materials. Because the evidence demonstrates only the transmittal of allegedly false litigation materials, this Court agrees that under Pendergraft and the related cases, Warnock has not proven the predicate acts of mail or wire fraud. For this reason alone, Warnock's RICO claims under §§ 1962(c) and (d) must fail.

**B.  Whether the Subrogation Complaint Against Warnock Was Fraudulent.**

Defendants next argue that Warnock cannot establish the predicate acts of mail or wire fraud for the additional reason that the subrogation complaint filed against her was not fraudulent. Warnock argues that the subrogation complaint was fraudulent because it alleged she was "operating" her vehicle at the time of the collision with Bridges when in fact State Farm and the Clinton Defendants knew that she was not driving. Defendants' argument

that the subrogation complaint was not fraudulent is two-fold. First, they argue that there are facts to support that Warnock was indeed driving the vehicle, and thus there was a factual basis to believe the "operating" allegation was true. Second, they contend that the term "operating" indicates exercising legal or practical control over a vehicle, rather than simply driving. Because there is evidence to support that Warnock owned the vehicle and loaned it to the actual driver, she was indeed "operating" the vehicle in a legal sense. Again, Warnock does not respond directly to the Defendants' argument but instead reasserts the allegations of the Amended Complaint with citation to deposition testimony. Warnock's argument appears to be that State Farm and the Clinton Defendants fully investigated its subrogation claims before filing complaints and thus should have known that Warnock was not the driver of the vehicle. Warnock does not cite any specific facts obtained in discovery indicating what Clinton or State Farm knew specifically about the accident between Bridges' and Warnock's vehicles.

This Court agrees with Defendants that the subrogation complaint was not fraudulent because there was a factual basis for the allegation that Warnock was operating (in the sense of personally driving) her vehicle at the time of the accident. The official police report for the accident identified Jake Foster as the driver of the vehicle in one section but, confusingly, identified Warnock as the driver in a different section. Paul

11

Clinton testified at his deposition that he based the subrogation complaint, in part, on his belief that Warnock herself may have been driving the vehicle at the time of the accident. That belief is supported by the police report, ambiguous though it may be. Subsequently discovered evidence that Warnock was not driving at the time of the accident is irrelevant. The crimes of mail and wire fraud "are both specific intent crimes that require [proof] that a defendant knew the scheme involved false representations." United States v. Phipps, 595 F.3d 243, 245-46 (5th Cir. 2010)(citing 18 U.S.C. §§ 1341 and 1343). The evidence supports Clinton's belief that Warnock may have been driving the vehicle and there is no proof that he knew the complaint contained false representations. For this reason, neither the Clinton Defendants' actions nor those of State Farm can form the basis for a mail or wire fraud prosecution or be a predicate act for civil RICO liability. Crawford Arms, Inc. v. Waste Management of Mississippi, Inc., 23 F.Supp.2d 676, 680 (S.D. Miss. 1998)(holding plaintiffs had not alleged a predicate act because allegedly false letter contained "no fraudulent assertion" and thus "there is no scheme to defraud, no mail fraud, and no predicate act under RICO.").

This Court further agrees that even without the police report's support for the fact that Warnock was herself driving the vehicle, the subrogation complaint is not fraudulent because the allegation that Warnock was "operating" the vehicle is subject to

an interpretation that she had negligently entrusted her vehicle to Foster. Indeed, Clinton testified at his deposition that because the police report was unclear in that it listed both Warnock and Foster as the driver of the vehicle, he believed it could also have meant that Warnock had negligently entrusted her vehicle to Foster, a minor child who was living with her. The address for Foster on the police report was the same as Warnock's, supporting that Foster had a relationship with Warnock which could have resulted in Warnock's lending her vehicle to Foster. Clinton further testified that he intended the word "operating" to mean "legal and practical control and management of the use of" the vehicle, as opposed to simply driving. For example, one could say that a company operates a fleet of delivery trucks that are driven by its employees. This meaning is supported by dictionary definitions. E.g., Webster's Third New International Dictionary 1580-81 (1986) ("To manage and put into operation whether with personal effect or not"); Random House Unabridged Dictionary 1357 (2d ed. 1993) ("...to manage or use..."). Thus, the summary judgment evidence supports the proposition that Clinton intentionally used the word "operate" in the subrogation complaint because he believed it would apply to either of the two possible scenarios suggested by the unclear police report. Warnock has submitted no evidence to suggest that Clinton or State Farm had the specific intent to defraud that is required to prove mail and wire fraud. Phipps, 595 F.3d at 245-46.

Again, that the facts later revealed that Warnock was not the driver of the vehicle and had not negligently entrusted her vehicle to Foster is irrelevant because Clinton had a good faith basis for the allegations in the subrogation complaint at the time it was filed. Thus, for this additional reason, this Court finds the undisputed evidence to demonstrate that Defendants committed neither wire fraud nor mail fraud and thus, Warnock cannot prove a predicate act to support her civil RICO claims. Crawford Arms, 23 F.Supp.2d at 680.

**C.   Whether There Exists a Valid RICO Enterprise.**

Defendants further urge summary judgment because the summary judgment evidence does not establish the existence of a RICO enterprise. An "enterprise" is "a group of persons or entities associating together for the common purpose of engaging in a course of conduct." Whelan v. Winchester Prod. Co., 319 F.3d 225, 229 (5th Cir. 2003) (citing United States v. Turkette, 452 U.S. 576, 583 (1981)). The enterprise may be a legal entity or "'any union or group of individuals associated in fact, though not a legal entity.'" Id. (quoting 18 U.S.C. § 1961(4)). The enterprise must be distinct from the RICO person who commits the predicate acts. Id. (citing Bishop v. Corbitt Marine Ways, Inc., 802 F.2d 122, 123 (5th Cir. 1983)). "It is not enough to establish that a defendant corporation *through its agents* committed the predicate acts in the conduct of its own business." Id. (emphasis added)(citing Elliott

14

v. Foufas, 867 F.2d 877, 881 (5th Cir. 1989)).  "That officers or employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation." Id. (citing Elliott, 867 F.2d at 881)).  Here, the alleged association-in-fact is between State Farm, J. Paul Clinton, and Stokes & Clinton, P.C.  Pl's RICO Statement ¶ 6; Amended Compl. ¶ 18.  Defendants argue that because Clinton and Stokes & Clinton were agents of State Farm in handling its subrogation complaints, they were not distinct from State Farm with regard to the alleged fraudulent scheme and thus Warnock has not established a RICO enterprise.  Warnock submits no response to this argument.  Tellingly, though Warnock asserts at Paragraph 21 of the Amended Complaint that the Defendants "have an existence separate and distinct from the enterprise," it cites no evidence whatsoever to support this allegation in its discussion of that paragraph in the Opposition to Summary Judgment.  In any event, this Court agrees with Defendants that there is no evidence of an enterprise here.

In Whelan, the defendants were a corporation and several of its officers and employees.  The Fifth Circuit held that alleged predicate acts committed by the corporate defendants were in the ordinary course of business and did not, as a matter of law, demonstrate the existence of a separate enterprise for the purposes of § 1962(c).  319 F.3d at 230.  In Elliott, the Fifth Circuit held

15

that allegations that a corporation was both a defendant and an enterprise in and of itself were insufficient to state a RICO claim. 867 F.2d at 881. Most analogous to the facts here is Kelly v. Palmer, Reifler, & Associates, 681 F.Supp.2d 1356, 1378 (S.D. Fla. 2010), in which the United States District Court for the Southern District of Florida granted summary judgment to a law firm defendant against a RICO claim where the alleged enterprise was between the law firm and its clients. In so doing, the district court held that because the law firm was acting as an agent for its clients, it was not a separate and distinct entity from those clients, and thus there could be no RICO enterprise. Id. at 1379. The district court went on to hold that the law firm's tactics "even if deceptive or extortionate, were not separate and apart from its corporate client ... [and] they were and are, for RICO purposes, the same actors." Id. at 1380. Likewise here, even assuming for the sake of argument that the Clinton Defendants' conduct was fraudulent (which this Court already has held it was not), the summary judgment evidence demonstrates that they acted purely as agents of State Farm in filing subrogation complaints and thus they and State Farm cannot form a RICO enterprise as a matter of law.

The Clinton Defendants further argue that Warnock cannot prove the existence of a RICO enterprise because the alleged association in fact does not exist "for purposes other than simply to commit

16

the predicate acts." Elliott, 867 F.2d at 881. In other words, the alleged enterprise is not "'an entity separate and apart from the pattern of activity in which it engages.'" Atkinson v. Andarko Bank and Trust Co., 808 F.2d 438, 441 (5th Cir. 1987)(quoting United States v. Turkette, 452 U.S. 676, 583 (1981)). The Clinton Defendants argue that because the alleged activities of the enterprise — the litigating of subrogation lawsuits — are also the alleged predicate acts, there can be no RICO enterprise. This Court agrees.

In Atkinson, the Fifth Circuit examined a RICO claim in which the defendant bank was alleged to have engaged in mail fraud in sending fraudulent bank statements to plaintiffs that stated improperly high rates of interest. Id. The Fifth Circuit affirmed the district court's award of summary judgment based on the failure to prove an enterprise because the

> alleged racketeering activity forming the predicate of the RICO charge was mail fraud — the mailing of false statements requesting payment of interest in excess of the agreed amounts. The mailing of loan statements was an activity of the bank. There is no evidence of any other activity on the part of the alleged enterprise.

Id. Similarly, Warnock has submitted no evidence that the Clinton Defendants and State Farm associated in fact to do anything other than file the allegedly false subrogation complaints. Without such evidence, Warnock cannot, as a matter of law, prove the existence of a RICO enterprise.

## V. CONCLUSION

This Court hereby finds that Warnock cannot prove a claim for RICO fraud under either § 1962(c) or (d) because there is no genuine issue as to any material fact with respect to the critical RICO elements of predicate acts or an enterprise. Because each of these missing elements, on its own, is fatal to Warnock's two RICO claims, this Court need not reach Defendants' remaining arguments. For the foregoing reasons,

**IT IS HEREBY ORDERED THAT** Defendants' Motions for Summary Judgment [docket entry nos. 181 and 183] are **GRANTED.**

**SO ORDERED AND ADJUDGED** this the 15th day of June 2011.

                                                   s/ David Bramlette
                                        **UNITED STATES DISTRICT JUDGE**